**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-19-0000126**
**23-JAN-2020**
**07:55 AM**

NO. CAAP-19-0000126
(Consolidated with Nos. CAAP-19-0000127, CAAP-19-0000128,
CAAP-19-0000129, and CAAP-19-0000130)


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


**CAAP-19-0000126**
STATE OF HAWAIʻI, Plaintiff-Appellee, v.
CODY B. AMARAL, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(2PC171000023)


**CAAP-19-0000127**
STATE OF HAWAIʻI, Plaintiff-Appellee, v.
CODY B. AMARAL, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(2PC171000034)


**CAAP-19-0000128**
STATE OF HAWAIʻI, Plaintiff-Appellee, v.
CODY B. AMARAL, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(2PC171000035)


**CAAP-19-0000129**
STATE OF HAWAIʻI, Plaintiff-Appellee, v.
CODY B. AMARAL, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(2CPC-17-0000194)


**CAAP-19-0000130**
STATE OF HAWAIʻI, Plaintiff-Appellee, v.
CODY B. AMARAL, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(2CPC-17-0000270)

MEMORANDUM OPINION
(By:  Ginoza, Chief Judge, Chan and Hiraoka, JJ.)

In 2017, Defendant-Appellant Cody B. Amaral (**Amaral**) was charged with various criminal offenses in five separate cases.  He was serving probationary terms in seven other cases at the time.[1]  He pleaded guilty to some of the charges, and the rest were dismissed pursuant to a plea agreement.  The Circuit Court of the Second Circuit[2] imposed sentence on January 3, 2019.  An Amended Judgment; Conviction; and Sentence was entered on January 7, 2019, to correct the amount of restitution Amaral was ordered to pay in one of the cases.  Amaral appeals from the sentencing; he contends that the circuit court abused its discretion when it sentenced him to three consecutive ten-year terms of imprisonment.  We affirm.

**I.**

In 2017, Amaral was a defendant in five criminal cases. The case numbers and charges were:

**17-023**
- theft, first degree
- unauthorized control of propelled vehicle
- unauthorized entry into motor vehicle, first degree
- promoting a dangerous drug, third degree
- unauthorized use or possession of drugs
- unauthorized possession of confidential personal information
- credit card theft
- credit card theft
- theft, second degree

**17-034**
- unauthorized control of propelled vehicle
- theft, second degree
- unauthorized entry into motor vehicle, first degree
- theft, fourth degree

**17-035**
- burglary, second degree
- theft, second degree

**17-194**
- burglary, first degree
- theft, second degree
- theft, third degree

**17-270**
- burglary, first degree
- attempted theft, fourth degree

---

[1]     CR Nos. 13-652, 14-797, 14-830, 14-838, 14-877, 14-878, and 14-911.

[2]     The Honorable Peter T. Cahill presided.

Amaral pleaded guilty to the following charges after reaching a plea agreement with the State:

| 17-023 | • theft, first degree<br>• promoting a dangerous drug, third degree<br>• unauthorized possession of confidential personal information<br>• credit card theft<br>• credit card theft<br>• theft, second degree |
|---|---|
| 17-034 | • unauthorized control of propelled vehicle |
| 17-035 | • burglary, second degree |
| 17-194 | • burglary, first degree<br>• theft, second degree |
| 17-270 | • burglary, first degree |

The sentencing hearing took place on January 3, 2019. At issue in this appeal are the sentences imposed for the first degree theft count in case 17-023, the first degree burglary count in case 17-194, and the first degree burglary count in case 17-270, which are the class B felonies to which Amaral pleaded guilty. The circuit court sentenced Amaral to 10 years in prison on each of those counts, to run consecutively, for a total of 30 years. Amaral contends that the circuit court abused its discretion by sentencing him to consecutive terms based on his failure to admit guilt, and by failing to consider sentencing disparity.

## II.

A sentencing judge generally has broad discretion in imposing sentence. State v. Solomon, 107 Hawai‘i 117, 126, 111 P.3d 12, 21 (2005). Thus, the applicable standard of review for sentencing appeals is whether the trial court committed plain and manifest abuse of discretion in its decision. Id. "Factors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions." Id. (cleaned up). "Generally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Id. (cleaned up).

## III.

A sentencing court has the discretion to order multiple terms of imprisonment to run concurrently or consecutively. Hawaii Revised Statutes (**HRS**) § 706-668.5(1) (2014)[3]. In making that determination, the court must consider the following factors:

> (1)   The nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)   The need for the sentence imposed:
>
> > (a)   To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
> >
> > (b)   To afford adequate deterrence to criminal conduct;
> >
> > (c)   To protect the public from further crimes of the defendant; and
> >
> > (d)   To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3)   The kinds of sentences available; and
>
> (4)   The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

HRS § 706-606 (2014). "[T]he weight to be given the factors set forth in HRS § 706-606 in imposing sentence is a matter generally left to the discretion of the sentencing court, taking into consideration the circumstances of each case." State v. Barrios, 139 Hawai'i 321, 328, 389 P.3d 916, 923 (2016) (citations omitted). However, a court imposing consecutive sentences "must state on the record at the time of sentencing the reasons for imposing a consecutive sentence." Id. at 333, 389 P.3d at 928 (underscoring and citation omitted). The requirement serves a dual purpose:

---

[3]   HRS § 706-668.5(1) states:

> If multiple terms of imprisonment are imposed on a defendant, whether at the same time or at different times, or if a term of imprisonment is imposed on a defendant who is already subject to an unexpired term of imprisonment, the terms may run concurrently or consecutively. Multiple terms of imprisonment run concurrently unless the court orders or the statute mandates that the terms run consecutively.

> First, reasons identify the facts or circumstances within the range of statutory factors that a court considers important in determining that a consecutive sentence is appropriate. An express statement, which evinces not merely consideration of the factors, but recites the specific circumstances that led the court to impose sentences consecutively in a particular case, provides a meaningful rationale to the defendant, the victim, and the public.
>
> Second, reasons provide the conclusions drawn by the court from consideration of all the facts that pertain to the statutory factors. It is vital, for example, for the defendant to be specifically informed that the court has concluded that [they are] dangerous to the safety of the public, or poses an unacceptable risk of re-offending, or that rehabilitation appears unlikely due to [their] lack of motivation and a failure to demonstrate any interest in treatment, or that the multiplicity of offenses and victims and the impact upon the victims' lives warrant imposition of a consecutive term. Hence, reasons confirm for the defendant, the victim, the public, and the appellate court, that the decision to impose consecutive sentences was deliberate, rational, and fair.

State v. Hussein, 122 Hawai'i 495, 509-10, 229 P.3d 313, 327-28 (2010).

In this case, the circuit court gave a cogent explanation for its sentencing decision during the January 3, 2019 sentencing hearing. The court first addressed HRS § 706-606(1), the history and characteristics of the defendant:

> I've spent quite a bit of time reviewing this matter. In fact, I came in on New Year's Day. I didn't want to rely on just reading material off of [the Judiciary Information Management System]. So I actually went and printed all the PSIs [presentence investigation reports] at a [sic] taxpayers' expense. There are almost 500 pages of PSIs.
>
> And I read them in reverse order. In other words, I read the most recent one and went back to the other theft charges, burglaries, and then back to the initial one, which was the crime where he stole money from his grandmother [referring to the cases for which Amaral was then on probation].
>
> So as part of the sentencing here, I just want to make sure the record is clear that I reviewed everything, including all of the letters that were submitted in support of Mr. Amaral the first time. And there were many, many letters the second time.
>
> There's [sic] no letters [the] third time. The PSI is devoid of any letters of support of the defendant. It's quite clear that the family, all of whom -- not all. But many of whom wrote many letters of support of Mr. Amaral the last time around, even though -- not all, but the majority [of] the victims were his own family members, all saying the same thing what a nice young man he is, he helps this and he helps that, all of which they were deceived into believing, none of which is true.

5

I have Mr. Amaral's last letter.  I pulled it out.
It's really almost the same as it is now.

And I realize the prior matters were threats to scare
you into complying.  But you're not going to be sentenced
today because of the threats.  You're going to be sentenced
today, Mr. Amaral, because you've committed new crimes that
are essentially no different than the old crimes.  The only
thing that's changed is the MO and the victims.

Although, there's a burglary in this case and some of
these, you transitioned into stealing cars.  In fact,
breaking into Servco and stealing a brand new one.  Quite
astonishing.  I think even the Servco people were trying to
figure out how that was done.

The last time when you stole from your uncles, one of
the reasons that I gave you -- or went along with probation
was because there was -- first of all, you agreed to go into
drug court, and you didn't do it.  I mean, that was just --
right there, that's failure number one.

But secondly, the idea was, . . . I remember the
sentencing and I remember the uncle being here.  [Amaral]
was supposed to cooperate to try and locate a lot of the
stolen material.  And Mr. Amaral just couldn't remember
anything.  I kind of believe him because his guilty plea was
he couldn't remember some things too.  But that doesn't
excuse him.  It just doesn't.  It's an astonishing
circumstance here.

.  .  .  .

The Supreme Court has set forth clearly what a trial
judge must do when considering consecutive sentences and all
sentences.  And it's Chief Justice Recktenwald set forth in
State versus Barrios, it does require the Court to consider
very specifically and to articulate as best as the judge is
able to that the Court has reviewed the sentencing factors
set forth in 706-606 in imposing a sentence.

And in each of those, in this particular instance --
and this is on the cases that he has now pled guilty to, not
the probation revocation and the probation violation
matters.  Because I'll deal with those separately.

But the nature and circumstance of the offense and the
history and characteristics of the defendant, these are all
crimes against people in which they have been violated
either their homes, their vehicles, property has been taken
from them.  The history and characteristic of the defendant
is a remorseless person who merely says things.

In the second -- I'll call it the second series of
cases [for which Amaral was on probation], one of the
victims wrote a letter.  And I read it because this was the
signal of how wrong I was.  And this is [Amaral]'s aunt.

She says in the last paragraph, we know that as we
write this to you not as spiteful family members or angry
vengeful neighbors -- I won't say their names -- we have
watched [Amaral] evolve into a person that has proven time
and time again that he cannot be trust [sic] and showing
[sic] no respect for others.  The letter is testament for
us, as well as for all the people he's terrorized, hurt and
violated.  I have never seen [Amaral] be remorseful, show
empathy, or ever take responsible [sic] for his behavior and

6

actions. He seems to have no conscious [sic] or compassion for others. We believe that should he be given even a shred of mercy, [Amaral] will only revert back to the place that has landed him where he is. This is not a person who will honor and respect a second, third or tenth chance.

I'm not sure if he's capable of feeling remorse for his actions other than the remorse of being caught. This is so much deeper than just that. This is about owning up to the pain and suffering he's caused and being accountable for the choices he's made.

[Amaral] doesn't deserve to be free to commit and elevate his criminal career, possibly hurting someone or himself. We strongly believe our community would be at risk should he be let off for his offenses.

When I read that from your aunt, Mr. Amaral, I don't read that to you so that you understand how she feels. I read that to you so you understand how I feel. And I made a serious, truly terrible error in judgment by sentencing you to probation the last time you were here. And by giving you that opportunity, the bottom line is that your aunt was right, and I was wrong. And I take responsibility for my error.

But the difference is that today, I have a chance to correct the error that I made. I can't make it up to the new victims of the crimes. That, I cannot do. But what I can do is to correct the error that I made and not having heeded what she said the last time that we were here.

The bottom line is, is that everything she says is documented throughout all of these matters. And it started with your own grandmother. And she wrote a letter for you the second time around and begged that you be given mercy. And yet, you stole from her.

. . . .

So at some point, when I look at the first sentencing factor that the statute requires me when I consider the character of the defendant, the character of the defendant was set forth by his aunt, and I was the one who ignored it. But that was spot on. Never changed.

You got 18 months the last time and was told go to drug court, get a chance to rehabilitate.

He didn't do that. Instead, what he did was commit a series of new crimes.

And even when he would get caught and questioned by the police, that didn't stop. He just went back out. And until he was charged, was brought in, it continued over -- whatever it was, a three or four-month period. One after the other after the other.

It is as the aunt says, he has no conscious [sic] or compassion for others. He will only revert back to the place that has landed him where he is at.

And I understand, sure, substance abuse plays a part in these things. But there has to be something deeper than just the substance abuse. Mr. Amaral has tons of family support. The last time we went through this, he had all

sentencing factors to give him a prison term, with the exception of one. And that is he has great family support.

Well, the family support is gone. So with the absence of that, that's the history and characteristic of the defendant.

(Underscoring added.)

The circuit court then addressed the HRS § 706-606(2) factors:

The sentence must reflect the seriousness, in this case, of the offenses to promote respect for law and to provide just punishment for the offenses.

These are serious offenses. When I read the letters from the two people who did write letters to the Court, they're horrible what these people have endured. And you might -- it might not be that -- you might look at it and say, well, it was some jewelry. But Mr. Philbin says the disk out of his camera was taken. How do you restore people's memories?

It can't be done. And that's serious.

The defendant must be punished with a just sentence given his prior history.

Deterrents [sic]. Well, there will be deterrents [sic] while Mr. Amaral is in custody. There's no question as to that. A signal also needs to be sent to other people in the substance abuse community that if you're going to be committing these offenses, there really has to be a new day of reckoning. And that when you pick up one charge after the other charge after the other charge after the other charge -- and we're not talking about a probation violation where he's testing positive. That happens all the time.

We give people chances. We give people opportunities to deal with their substance abuse addiction. But if you're going to continue to commit the same crimes that brought you here to begin with, then we need to do something to adequately deter it. And that is to protect the public and seek [sic] from further crimes of the defendant.

The aunt said it. There really isn't anything other than extended prison that is going to protect the people.

(D), to provide the defendant with needed education and vocational training.

I have no doubts that the prison system is not the place where we necessarily provide people with vocational training or, frankly, rehabilitation. It's just not the most effective means. But there's only two types of sentences that can be given. Probation or prison.

The circuit court also addressed the HRS § 706-606(3) and (4) factors, as well as consecutive and concurrent sentences:

Now, there's different types of prison sentences, consecutive or concurrent or a combination of both, or

8

probation.  But if I gave Mr. Amaral probation -- and that's not on the table.  But he was given that the last time and said go to drug court, they're willing to accept you, he just blew them off.  He blew off his attorney.  He blew off the prosecution.  He blew off all the family members who wrote letters.

And why?  Because it doesn't seem that he's capable of conforming his conduct to that which is necessary to not only be a law-abiding citizen, but to address his problems.

Unwarranted sentence disparities.  That's difficult.

I agree with you Mr. -- I think that's probably the most difficult one.

But there comes a point where people have accumulated crime after crime after crime.  And Mr. Amaral has graduated.  He did that the last time.  But he moved away from family members, and he now is hitting on other people who are not family members.

And family members have the power to forgive and, to some extent, even forget.  But I can't impose the forgive and forget on other people who are victims of his crimes and to take it upon myself to say, well, you should just forgive and forget and, therefore, we'll give him a lighter sentence.  That's inappropriate.

And I think that in this particular case -- the standard is unwarranted sentence disparities.  But sometimes the sentence disparity may be warranted given the nature of the offense and the extent of the crime.

So I have considered all of these factors.  And, again, as I did, I reviewed each one of these.  And I -- you know, the uncle has received none of his property back.  The grandmother has gotten nothing back.

And I understand, she probably doesn't want it.  But that's not the point.  There was a lot of forgiveness from family members.  But as I said, I don't have the capacity or the will, at least today, to have other victims of crimes to substitute my judgment and to say oh, well, I'll forgive him.  And frankly, those family members also no longer have the capacity to say, well, it's okay, I forgive [Amaral] for doing these things.

That's fine, you can forgive the crimes committed against you.  And that's probably a good thing.  But I can't do that with respect to other nonfamily members.

. . . .

So in considering all the sentencing factors, and hopefully I have articulated it appropriately.

. . . .

So it is the sentence of the Court that the defendant is sentenced on each B Felony to ten years on each count, and each will run consecutive to the others.  And all other counts, the C Felonies, are all running concurrent.

The circuit court complied with <u>Barrios</u> and <u>Hussein</u>. We hold that the circuit court did not abuse its discretion in imposing three consecutive ten-year terms.

Amaral contends that the circuit court impermissibly "used [Amaral]'s failure to admit guilt as a factor" in imposing sentence. Amaral pleaded guilty to the charges on which he was sentenced. The record is devoid of any indication that Amaral sought to change his guilty plea or otherwise attempted to maintain innocence, before or during sentencing. Amaral argues that the circuit court "adopted" the statement of his "grandmother" (it was actually his aunt) that she had "never seen [Amaral] be remorseful, show empathy, or ever take responsible [sic] for his behavior and actions[,]" and therefore sentenced him "based on the refusal to admit guilt." Amaral's argument lacks merit. <u>Cf.</u> <u>State v. Kamana'o</u>, 103 Hawai'i 315, 323, 82 P.3d 401, 409 (2003) (noting that in enhanced or extended sentencing cases, if "the record shows that the court did no more than address the factor of remorsefulness as it bore upon defendant's rehabilitation, then the court's reference to a defendant's persistent claim of innocence will not amount to error requiring reversal").

Amaral also contends that the circuit court "failed to properly consider sentencing disparity[.]" HRS § 706-606(4) requires that a sentencing court "consider . . . [t]he need to avoid unwarranted sentence disparities <u>among defendants with similar records who have been found guilty of similar conduct</u>." (Underscoring added.) Amaral failed to present the circuit court with any information about sentences that had been imposed upon any other defendant with a record similar to his who had been convicted of crimes similar to those to which he pleaded guilty. "Absent clear evidence to the contrary, it is presumed that a sentencing court will have considered all factors before imposing concurrent or consecutive terms of imprisonment under HRS § 706-606." <u>Barrios</u>, 139 Hawai'i at 333, 389 P.3d at 928 (citation omitted). Amaral's second argument lacks merit.

## IV.

Based upon the foregoing, the Amended Judgment; Conviction; and Sentence entered by the Circuit Court of the Second Circuit on January 7, 2019, is affirmed.

DATED:  Honolulu, Hawai'i, January 23, 2020.

On the briefs:

Donald S. Guzman,
Richard B. Rost,
for Plaintiff-Appellee.

Shawn A. Luiz,
for Defendant-Appellant.

Chief Judge

Associate Judge

Associate Judge